UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PILAR ASH,

                    Plaintiff,

          v.

DESCHUTES COUNTY; DESCHUTES
COUNTY SHERIFF'S OFFICE; PAUL
GARRISON; CASEY KARPSTEIN; SHANE
NELSON; DERRON McMASTER;
MICHAEL GILL; DAN BILYEU; JON ASH
and JOAH ASH,

                    Defendants.

6:12-cv-02109-TC

FINDINGS AND RECOMMENDATION

COFFIN, Magistrate Judge:

    This case stems in essence from a parental custody dispute between plaintiff Pilar Ash and her ex-husband, Joah Ash, regarding their two minor children, JA and HA. Defendant Jon Ash is the grandfather of JA and HA. Because all these parties share the same surname, the Court will hereinafter reference each by his/her first name.

    Joah has previously been dismissed from this action in part on the basis of the Rooker-Feldman doctrine (See Finding & Recommendation (#76), adopted by Order (#91)). In addition, the Court

Page 1 - FINDINGS and RECOMMENDATION

removed Pilar Ash as the guardian ad litem for JA resulting in the dismissal of false imprisonment claims against Joah and Jon. Thus no claims remain against Joah and a single claim, brought by Pilar Ash for Intentional Infliction of Emotional Distress (IIED) remains against Jon.

Pilar has also asserted claims against various members of the Deschutes County Sheriff's Office (Paul Garrison, Casey Karpstein, Shane Nelson, Derron McMaster, Michael Gill, and Dan Bilyeu) and Deschutes County. These claims involve alleged violations of her civil rights under 42 U.S.C. §1983 (Due Process, Equal Protection, Unconstitutional Policies, Failure to Train), and state law claims of Negligence and IIED.

Before the Court are motions (#79) by the Deschutes County Defendants for summary judgment on all claims against them and a motion by Jon (#89) for dismissal of the remaining claim against him.

For the reasons that follow, the motions should be granted in their entirety and this action should be dismissed.

## FACTUAL BACKGROUND

Although the parties provide greater detail in their briefing, the salient facts can be succintly stated.

Joah at all pertinent times was himself a deputy for the Dechutes County Sheriff's Office (DCSO). He and Pilar divorced, and the Deschutes County Circuit Court awarded both parents joint legal and physical custody of HA and JA.

In February 2012, it became apparent that Pilar intended to move to Nevada with the children without Joah's permission or seeking a modification of the court's order authorizing her to do so.

Joah became aware of this, and balked at returning JA to Pilar when his parenting time concluded on February 22, 2012.

Concerned whether his failure to return the children on time would jeopardize his position as a deputy, Joah contacted Defendant Sgt. Bilyeu in advance to discuss the issue, who informed him that the matter was a "civil issue."

Several hours before Joah's parenting time was to end, HA texted Pilar and informed her that Joah did not intend to return JA. This prompted Pilar to call DCSO dispatch to request assistance when she went to Joah's residence to pick up the children.

At some point, Defendant Karpstein contacted Pilar and informed her that the matter was a civil dispute which DCSO did not involve itself with absent a court order. He also stated that, because Joah was a DSCO deputy, he would consult with a supervisor regarding how to handle the matter.

Karpstein then called Joah and spoke with him regarding the dispute, and Joah responded by telling him "it was a civil issue" and that Pilar intended to leave the state of Oregon with the children.

Karpstein then again called Pilar and related his conversation with Joah.

After speaking with Pilar on this second occasion, Karpstein contacted Defendant Lt. Garrison to discuss the matter. Garrison determined that DCSO had a potential conflict of interest because Joah was a deputy. Garrison then took steps to refer the entire matter to the Oregon State Police (OSP).

At 8 p.m., Pilar and a friend drove to Joah's home to pick up the children. HA was there, and Joah transferred her to Pilar's custody without incident. JA, however, was not present, having been

Page 3 - FINDINGS and RECOMMENDATION

turned over by Joah to JA's grandfather (Jon) at some point prior to Pilar's arrival. Pilar went to Jon's residence to locate JA, but Jon and JA were not there.

Pilar then called DCSO, and was informed that the matter had been referred to OSP. An OSP trooper met plaintiff at her home later that evening, who told him during an interview that she was not concerned about JA's safety. The trooper then contacted Joah, and was informed by him that Pilar intended to move out of state with the children in violation of the existing court order and for that reason Joah did not want to return JA until the matter could be addressed by the court.

Based on the investigation, the trooper determined that there was no evidence of custodial interference and informed Pilar that her dispute with Joah was a civil matter and OSP would not get involved.

On the morning of the next day, Pilar and her divorce attorney submitted an ex parte motion for an Order of Assistance directing DCSO or any law enforcement officer to assist in recovering custody of JA. Judge Wells Ashby of Deschutes County Circuit Court issued the Order, which plaintiff and her attorney presented to a DSCO employee who ultimately delivered it to DCSO Lts. Shane Nelson and Derron McMaster.

McMaster and Nelson contacted Joah's supervisor in the Corrections Department, and learned that Joah was on duty. They summoned Joah to the main office, accompanied by his supervisor, Lt. Michael Gill. Shortly before noon, McMaster formally served Joah with the Order, and Joah requested that he be allowed to call his father to confirm JA's whereabouts and also his divorce attorney, which he then did. After concluding his telephone calls, Joah informed McMaster that his father, Jon (who is an attorney) would be at the courthouse in approximately 1 hour (1:15 p.m.) for

Page 4 - FINDINGS and RECOMMENDATION

a court hearing and would bring JA with him at that time.  Joah also related that a court hearing had been scheduled at 3 p.m. that day before Judge Ashby to address the Order of Assistance.

This prompted McMaster to go to the courthouse to contact Judge Ashby to ask him whether he wanted the Order executed  by  having DCSO  immediately attempt to find JA and return him to Pilar in advance of the hearing.  He located Judge Ashby shortly after 1p.m., and Judge Ashby, upon being advised of the situation, instructed Lt. McMaster not to execute the Order.

At 3 p.m., Judge Ashby ordered JA returned to Pilar and Joah immediately complied.

Several days later, Pilar moved to Nevada with JA and HA without first seeking modification of the court order regarding parenting time.  Subsequently, both Pilar and Joah filed contempt motions against each other for violating the court order (Pilar for moving the children to Nevada and Joah for failing to return JA on February 22, 2012).  The court thereafter found them both in contempt but declined to impose sanctions in light of their stipulation to a mutually agreed-upon modification of the custody order.

## DISCUSSION

A.  Deschutes County Defendants

Plaintiff's efforts to construct a variety of §1983 claims against the Deschutes County defendants based on the above events fall far short of the mark, are bereft of citation to pertinent precedent, and frequently provide conclusory assertions as substitutes for caselaw, other authority, or admissible evidence.  A few examples illustrate the defects that permeate plaintiff's §1983 claims:

The claim against Defendant Bilyeu stems from a conversation he had with Joah in which he advised Joah that he viewed the child custody dispute between Joah and Pilar as a "civil dispute."

This characterization was not only accurate but was also shared by OSP and a Bend police officer.[1]
 How this conversation violated some Constitutional right of Pilar is unexplained, other than the conclusory statement that "Bilyeu ... violated plaintiff's right to equal protection. Plaintiff, a female, was treated differently than Joah ..." [2]

Indeed, plaintiff's Equal Protection claim against all defendants is based entirely on two non-sequiturs: 1) her subjective belief that she was not given the assistance she requested from DCSO defendants because of her gender and 2) the fact she is female and Joah, her ex-husband, is male. A subjective belief is not admissible evidence. Nor is the mere fact of plaintiff's gender enough by itself to satisfy plaintiff's burden to prove that the actions or inactions of defendants were the product of a discriminatory animus based upon her gender. Plaintiff has produced no evidence, for example, of comparable cases wherein DCSO assisted male parents in civil child custody disputes while declining to assist female parents such as herself. See, e.g., Reese v. Jefferson School District No. 14J, 208 F.3d 736, 740 (9th Cir. 2000) (finding no violation of Equal Protection Clause of the 14th Amendment where school district punished female students without punishing male students accused by the plaintiffs; court held "(t)here is no direct evidence of gender animus, nor is there even evidence of system-wide disparate impact in punishment between genders.") While comparable cases demonstrating different treatment of divorced spouses in child custody disputes could support an inference of a discriminatory animus based in gender, a singular case of first impression does not. Plaintiff must show that a defendant acted with intent to discriminate against her based upon her

---

[1] Bend police officer Mark Tisher contacted Pilar early in the evening of February 22, 2012 and told her the Bend Police Department would not get involved because her dispute with Joah was a civil matter.

[2] P. 19 of Plaintiff's Memo (#93).

Page 6 - FINDINGS and RECOMMENDATION

membership in a protected class and that the defendant's action had a discriminatory effect. See, Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005); Benigni v. City of Hemet, 879 F.2d 473, 477 (9th Cir. 1988). No competent evidence has been presented that would enable a rational fact-finder to conclude that any of the DCSO defendants discriminated against plaintiff because of her gender. Conclusory allegations are insufficient to survive summary judgment. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff's §1983 claims based upn Due Process and First Amendment rights fare no better.

In essence, Pilar contends that the actions of the DCSO deprived her and JA of their right to familial relations as guaranteed under the Due Process Clause of the 14th Amendment. This claim is more properly addressed under the 14th Amendment as opposed to the First Amendment, which addresses relationships formed for the purpose of engaging in expression activities (speech, assembly, petition for redress of grievances, and the exercise of religion.) See Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18 (1984); IDK v. Clark County, 836 F.2d 1183, 1191-1194 (1988).

To establish a 14th Amendment liberty interest in familial relations, a plaintiff must establish both 1) that the government intentionally engaged in conduct that interfered with plaintiff's protected liberty interest and 2) the government conduct "shock[s] the conscience or offend[s] the communities sense of fair play and decency. " See Rosenbaum v. Washoe County, 663 F.3d 1071, 1079 (9th Cir. 2011) (citing Rochin v. California, 342 U.S. 165, 172-73 (1952)).

Here, the DCSO defendants took no affirmative action whatsoever to separate plaintiff from JA or vice versa. Thus, they did nothing to interfere with plaintiff's protected liberty interests. Instead, her complaint is that they did not act to compel Joah to return JA at the conclusion of his parenting time and failed to expeditiously locate and return JA to her after receiving the Order of Assistance.

Page 7 - FINDINGS and RECOMMENDATION

In essence, plaintiff is saying she has a Constitutional right to the police recovering her child and returning the child to her. However, a private citizen does not have a Constitutional right to the police taking a certain action, with the exception of those situations where police must avoid deliberate indifference to someone the police have put in their care or control or in a vulnerable position. See, e.g., Deshaney v. Winnebago County Department of Social Services, 489 U.S. 189. 195-196 (1989) (the Due Process Clause generally "confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual ... the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them"); see also, Estate of Amos ex rel. Amos v. City of Page, Arizona, 257 F.3d 1086, 1090 (9th Cir. 2001) (a state actor violates another's due process rights under §1983 if the state actor puts a person in a situation more dangerous than in which he was found); and Maxwell v. County of San Diego, 697 F.3d 941, 948 (9th Cir. 2012)(impeding access to care that could save a person's life amounts to leaving a victim in a more dangerous situation). The defendants here did not take any action that placed Pilar or JA in any danger.

Moreover, assuming arguendo, the DCSO defendants could have done something to prevent the approximately 19 hour interference with Pilar's familial relations with JA, none of the interactions or conduct attributed to the DCSO defendants can remotely be described as "shocking the conscience" or "offending the community's sense of fair play and decency. " This matter did in fact involve a civil dispute between two ex-spouses over sharing custody of their children, the DCSO properly referred the dispute to the OSP because one parent was a member of the DCSO and there was a potential conflict of interest, the plaintiff expressly confirmed that JA was in no danger while

in the custody of his father and/or grandfather, the matter was scheduled for a hearing before the court within a few hours after the Order of Assistance had been delivered to the DCSO, and the judge who issued the Order and who was scheduled to preside at the hearing informed the DCSO he did not want the Order executed beforehand.

I find nothing inappropriate in the manner in which the DCSO defendants responded to and handled this entire situation, much less anything that meets the standards of a substantive due process violation.

Finally, there is no little irony in plaintiff's claim that the DCSO defendants interfered with her familial relations with JA by failing to take more immediate action to locate and return JA when Joah extended his parenting time in violation of the court order, given that the trigger of this custody dispute was her own expressed intention to relocate the children to Nevada in violation of the same court order.

In sum, I find no merit to the §1983 claims against any of the DCSO defendants.[3] In view of my finding that no constitutional violations occurred, the Monell claims against the County fail as well. Monell v. City of New York, 436 U.S. 658, 694 (1978).

From the same reasons discussed above, plaintiff's negligence and IIED claims against the DCSO defendants should be dismissed and their motions for summary judgment granted. As to the negligence claim, the DCSO defendants did not breach any duty owed to plaintiff in the manner in which they responded to her requests for assistance in recovering JA, they properly referred the matter to OSP for investigation, and the Order of Assistance at issue confers discretion on DCSO

---

[3] Even were the court to find some merit on the §1983 claims, the individual defendants would clearly be entitled to qualified immunity as plaintiff has cited no caselaw, nor has the court located any, that would have notified "a reasonable officer that his conduct was unlawful in the situation he confronted." Eng v. Cooley, 552 F. 3d 1062, 1075 (9th Cir. 2009).

Page 9 - FINDINGS and RECOMMENDATION

to employ "any reasonable means" to recover physical custody of JA. Obtaining voluntary compliance is certainly a "reasonable means," especially when it has the approval of the very judge who issued the order. Regarding the IIED claim, none of defendants' actions were improper or inappropriate, much less an "extraordinary transgression of the bounds of socially tolerable conduct." Delaney v, Clifton, 180 Or. App. 119, 129 (2002).

B. Jon Ash

The elements of an IIED claim are:

> 1) that defendants intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress; 2) that defendants engaged in outrageous conduct -i.e. conduct extraordinarily beyond the bounds of socially tolerable behavior; and 3) that defendants' conduct in fact caused plaintiff severe emotional distress.

Checkley v. Boyd, 198 Or. App. 110, 124 (2005).

The context of Jon Ash's alleged conduct here has been described above. In short, Pilar gave notice to Joah of her intent to move the children out of state without first obtaining a modification of the court order. Joah desired a court hearing before Pilar could act and thus did not return JA to her when his parenting time concluded at 8 p.m. on February 22, 2012.[4] Joah gave custody to Jon overnight, and JA was returned to Pilar after a court hearing on the afternoon of February 23.

Plaintiff is unable to cite any Oregon caselaw upholding an IIED claim under similar circumstances, nor has the court found any. The case most analogous to the one here is Hetfeld v. Bostwick, 136 Or. App. 305 (1985). In Hetfeld, a father brought an action against his children's mother and her new husband for intentional infliction of emotional distress, alleging in his complaint

---

[4]Pilar's Second Amended Complaint sets forth that "(o)n February 21, 2012, plaintiff received email paperwork from Joah's attorney. The paperwork was filed in an attempt to prevent plaintiff from moving with the children."

Page 10 - FINDINGS and RECOMMENDATION

that the defendants, with the purpose of causing plaintiff "emotional distress, anguish and psychological injury," embarked on a course of conduct aimed at estranging him from his children, including unlawfully withholding visitation in contempt of court by making the children unavailable. 136 Or. App at 307.

The trial court dismissed the IIED action for failure to state a claim, and the Court of Appeals affirmed, while making the following observations:

> Whether conduct is an extraordinary transgression is a fact based inquiry, to be considered on a case-by case basis, considering the totality of the circumstances. Lathrope-Olson v. Dept. of Transportation, 128 Or. App 405 (1994). [M]any of the alleged behaviors are all too common in the context of a hostile dissolution involving children. Certainly no single act alleged to have been committed here was "outrageous in the extreme." Construing the complaint liberally, as we are bound to do, the allegations present this scenario: With the intention and purpose of causing plaintiff emotional harm, defendants engaged in a course of conduct aimed at causing estrangement of plaintiff from his children. The narrow question that this case presents is whether, in light of the parties familial relationship and discord, a jury should be permitted to find that the actual means of inflicting emotional harm; i.e., the course of conduct aimed at causing the estrangement of the children from their father, is an extraordinary transgression of the bounds of socially tolerable conduct. We do not think so.
> Far from extraordinary, the sad truth is that when a relationship breaks down, the children of the relationship often become the instruments of the parties' pursuits to cause each other pain. To a certain extent, the type of conduct can be prevented or moderated by the procedures available in ORS chapter 107. See, e.g., 107.105(1)(b) (relating to visitation); ORS 107.135 (relating to modification of decree); ORS107.700 et seq. (Abuse Prevention Act) However, the very need for and existence of those statutes speaks to the prevalence of such conduct. Cf Shay v. Paulson, 131 Or.App. 270 (1994) (illegal or criminal conduct not per se "outrageous in the extreme"). It is not "outrageous in the extreme" to behave as people commonly behave in such circumstances. We conclude that the trial court correctly dismissed the claim for intentional infliction of emotional distress.

136 Or. App. at 310 (footnote omitted).

If anything, the factual allegations in Hetfeld were more egregious than those herein, as the defendants were accused of conduct aimed at causing estrangement of plaintiff from his children.

Page 11 - FINDINGS and RECOMMENDATION

Here, by contrast, the conduct of Jon was aimed at preventing Pilar from relocating JA out of state in violation of the child custody order without a hearing. As noted by the Hetfeld court, child custody disputes are far from extraordinary, and it is not "outrageous in the extreme" to behave as people commonly do in such circumstances.

This court agrees. The actions of JA's grandfather do not rise to the level of outrageous conduct which is extraordinarily beyond the bounds of socially tolerable behavior. Defendant Jon Ash's motion to dismiss should be granted.

## CONCLUSION

Defendant Jon Ash's motion (#89) to dismiss should be allowed and the claim of intentional infliction of emotional distress should be dismissed. The Deschutes County defendants' motion (#79) for summary judgment should be allowed and this action should be dismissed.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than fourteen days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this 29th day of May , 2014.

  s/Thomas M. Coffin
THOMAS M. COFFIN
United States Magistrate Judge

Page 12 - FINDINGS and RECOMMENDATION